IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

WILLIAM C. STRUNA,

     Plaintiff,

v.                                         Civil Action No. 3:09-CV-77
                                         (BAILEY)

THE SHEPHERDSTOWN PLANNING
COMMISSION, A Public Body, et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this Court are the Defendants' Motion to Dismiss, filed August 13, 2010 [Doc. 33]; and the defendants' Amended Motion to Dismiss for Res Judicata, filed August 11, 2010 [Doc. 31].[1]  The plaintiff filed responses to both motions on December 8, 2010.  Defendants filed their replies on December 14, 2010.  Having been fully briefed, this matter is now ripe for adjudication.  This Court has reviewed the record and the arguments of the parties and, for the reasons set out below, **ORDERS** that the Defendants' Motion to Dismiss should be **GRANTED**, and the Amended Motion to Dismiss for Res Judicata should be **DENIED**.

---

[1] The defendants' original Motion to Dismiss for Res Judicata [Doc. 14] argued that *res judicata* applies because the Circuit Court of Jefferson County dismissed Count III of the complaint filed in that court with prejudice.  At that time, neither party had provided this Court with a copy of the state court complaint.  This Court determined it could not definitively state what claims were dismissed with prejudice.  Accordingly, the motion was denied without prejudice.  The defendants have since provided this Court a copy of the state court complaint.

## I.  Factual and Procedural History

This case emanates from a dispute between the plaintiff and defendants with regard to replacement windows at property located at 107 West New Street in Shepherdstown, West Virginia.  In 2006, the plaintiff, William Struna, filed an application for an improvement location permit to install these windows, which application was denied by the Shepherdstown Planning Commission ("Planning Commission" or "Commission") on January 15, 2007.  The plaintiff elected not to appeal this decision through the appropriate administrative channels.

On May 8, 2008, the plaintiff filed an action in the Circuit Court of Jefferson County, West Virginia, against former Shepherdstown mayor, Lance Dom, and the Planning Commission, Jefferson County Civil Action No. 08-C-195 ("Struna I").  The complaint alleged, among other things, that the Planning Commission unlawfully denied the plaintiff's application for a building permit and that in 2006, defendant Dom[2] violated the plaintiff's property rights.

The Jefferson County Circuit Court dismissed Struna I on April 30, 2009, specifically dismissing Count III[3] with prejudice for failure to exhaust administrative remedies.[4]  The plaintiff took no further action to pursue the permit application in Struna I.

_____

[2]  By Order dated August 6, 2010 [Doc. 29], defendant Dom was dismissed from this action for plaintiff's failure to timely effect service of the complaint and summons within the 120-day time limitation proscribed by both Fed.R.Civ. P 4(m) and W.Va.R.Civ.P. 4(k).

[3]  Count III of the complaint in Struna I requested that the circuit court of Jefferson County issue a Writ of Mandamus directing the building code official to approve the window replacement sought under the 2006 building permit application.

[4]  The remaining counts were dismissed without prejudice.

Shortly thereafter, on June 22, 2009, the plaintiff filed a second application for a building permit to replace the same windows. The Historic Landmark Commission of Shepherdstown ("HLC") conducted a hearing on August 10, 2009, at which counsel was present, to discuss the application for the installation of thirty-two (32) "premium quality, wooden replacement windows manufactured by the Anderson window company." Compl. at ¶ 24. Plaintiff alleges the HLC relied upon factually inaccurate assumptions to arrive at its conclusions that these windows would not provide additional insulation or increase the value of the home, specifically challenging certain studies considered by the HLC. On September 15, 2009, the HLC issued a recommendation to deny the second application for the replacement windows.

The Planning Commission held a hearing on September 21, 2009, to review the plaintiff's application. The application was again denied by the Planning Commission on October 8, 2009. Displeased with that decision, the plaintiff alleges the Commission expressed prejudice toward him as a direct result of the personal animus between he and former mayor (and former commissioner) Dom, which constituted "governmental misconduct and a deprivation of [his] Constitutional right to a fair hearing, due process of law and equal protection of the law." Compl. at ¶ 39. Plaintiff sets forth another, more relevant, argument that the Commission's stated conclusions are not supported by the evidence and that it "relied upon subjective personal judgments regarding 'aesthetics,' 'integrity of the neighborhood' and 'value of the property for resale' . . .." Id. at ¶¶ 47-48. The plaintiff asserts this also "constitutes a violation of his Due Process and Equal Protection Rights of the State and Federal Constitutions." Id. at ¶ 50.

On November 6, 2009, the plaintiff filed the instant action ("Struna II") in the

Jefferson County Circuit Court. The defendants removed the action to this Court on December 2, 2009 [Doc. 3]. In addition to the above-mentioned relief sought, Count III of the Complaint requests that this Court review and reverse the Planning Commission's October 8, 2009, decision to deny the permit.

Count IV of the Complaint seeks Declaratory Relief pursuant to § 55-13-1, *et seq.* to determine the rights and responsibilities of the parties pursuant to the Municipal Ordinance of Shepherdstown's Sections 9-902 IV(a) & (b) and 9-902 V(a), (c) and (d). Plaintiff also requests similar analysis of the parties' rights pursuant to "Chapter 8A of the West Virginia Code, the Sheperdstown Municipal Ordinance, and the West Virginia Constitution and the effect these may have on the plaintiff's Constitutional rights to a fair hearing, Due Process and Equal Protection of the Law." Compl. at ¶ 82.

## II.    Motion to Dismiss Standard

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243-44 (4th Cir. 1999). When rendering its decision, the Court should consider only the allegations contained in the Complaint, the

4

exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." ***Id***. (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, — U.S. —, 129 S. Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

### III.    Exercise of Jurisdiction

At the outset, this Court finds it necessary to explain its decision to exercise its jurisdiction over this matter. The plaintiff's Complaint seeks declaratory relief to determine the rights and responsibilities of the parties pursuant to the Shepherdstown Ordinance. "The usual rule is that the courts ought to defer granting a declaratory judgment action where administrative remedies, such as an appeal from a protestable order, have not been exhausted . . .." ***Hardy v. Richardson, et al.***, 479 S.E.2d 310, 313 (W. Va. 1996). As will be discussed below, in this case the plaintiff did not exhaust administrative remedies. The Southern District has also voiced its opinion on this subject in ***Tammy W., et al. v. Hardy***:

The presumption of Article III jurisdiction is subject to an implicit limitation: injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy "ripe" for judicial resolution.

681 F.Supp.2d 732, 736 (S.D. W. Va. 2010).

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

This Court has carefully considered the above policy concerns, however, it believes these purposes will not be undermined by this Court's involvement in this particular case. In this case, it is the plaintiff whose permit was twice denied who once again has prematurely availed himself of the courts. Since the plaintiff insists on pursuing relief in this manner, this Court is obliged to accommodate his request, insofar as he alleged violations of the Constitution of the United States. Based on the history of this action, this Court has little reason to doubt that, otherwise, the plaintiff's obstinance will again land him in this Court.

## IV.   Discussion

### A.   Motion to Dismiss for Res Judicata

The Amended Motion to Dismiss for Res Judicata [Doc. 31], filed by the Planning Commission and the Historic Landmark Commission of Shepherdstown ("HLC") alleges

that Counts II and III of the Complaint should be dismissed for failure to state a claim upon which relief can be granted. The essence of the Motion is that *res judicata* bars further litigation on Count III because the Circuit Court of Jefferson County dismissed that count with prejudice in Struna I.

The Supreme Court of the United States has long recognized that "[public] policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." ***Fed. Dep't Stores, Inc. v. Moitie***, 452 U.S. 394, 401 (1981) (quoting ***Baldwin v. Traveling Men's Ass'n***, 283 U.S. 522, 525 (1931)). Created in furtherance of this policy, the doctrine of *res judicata* provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." ***Rivet v. Regions Bank of Louisiana***, 522 U.S. 470, 476 (1998). Moreover, a judgment in a prior action will preclude another action based upon the same facts and asserted injury even though the subsequent action asserts a different legal theory to justify recovery. *See* ***Nevada v. United States***, 463 U.S. 110, 129-30 (1983); *see also* ***Lubrizol Corp. v. Exxon Corp.***, 929 F.2d 960, 963 (3d Cir. 1991) (additional legal theory will not defeat preclusion when acts complained of, material facts alleged, and witnesses and documentation required to prove allegations are same as in prior action).

The parties argue at length over whether the instant action is simply an attempt to relitigate the first permit denial. Although that is likely the case, this Court does not find that necessary to decide. Rather, this Court finds that the instant claim is not barred by *res judicata* because there has been no final judgment *on the merits*. The claim in Struna I was

dismissed for failure to exhaust administrative remedies alone.

Several commentators have spoken to the above issue, and appear to conclude that dismissal for failure to exhaust administrative remedies is not a decision on the merits. For example, in *Wright, Miller & Cooper, Federal Practice and Procedure*, Volume 18, § 4436, the authors state:

> There is little mystery about the *res judicata* effects of a judgment that dismisses an action for lack of subject or personal jurisdiction or for improper venue. Civil Rule 41(b) provides that a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits. This provision means only that the dismissal permits a second action on the same claim that corrects the deficiency found in the first action. . .. Similar effects attend dismissals that rest on matters closely related to jurisdiction, such as justiciability *or a requirement of prior resort to an administrative agency*.

(emphasis added).

See also *Moore's Federal Practice*, 3d Ed., Vol. 18, § 131.30(3)(b):

> Ordinarily, a judgment for the plaintiff is necessarily a judgment on the merits, since a judgment granting the requested relief necessarily established the claim. However, the defendant may sometimes prevail because the court determines that it has no subject matter jurisdiction, that personal jurisdiction of defendants or of indispensable parties is lacking, that venue is improper, or that plaintiff has failed to comply with some prerequisite to filing suit, *such as exhaustion of administrative remedies*. In such cases, the resulting judgment of dismissal is not a determination of the claim, but rather a refusal to hear it, and the plaintiff may thereafter pursue it in an appropriate forum or when the preconditions have been met.

(emphasis added).

The same result is found in the *Restatement of the Law Second, Judgments 2d*,

§20(2) which provides:

> A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

The Supreme Court, in a leading case, has reached this same conclusion. In construing Federal Rules of Civil Procedure, Rule 41(b), which pertains to involuntary dismissals, the Court has interpreted the rule's "lack of jurisdiction" exception broadly, giving the concept of "jurisdiction" meaning beyond its traditional personal and subject matter usages: "[T]he exception . . . encompass[es] those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." *Costello v. United States*, 365 U.S. 265, 285 (1961).

Based upon the above well-reasoned commentary, this Court **DENIES** the defendants' Amended Motion to Dismiss for Res Judicata **[Doc. 31]**.

### B. Plaintiff Fails to State a Violation of Substantive Due Process

As the Fourth Circuit noted in *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 827 (4th Cir. 1995), "[t]o make out a claim that [the] County's action violated substantive due process, [plaintiff] must, in the circumstances of this case, demonstrate (1) that [he] had property or a property interest; (2) that the state deprived [him] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. *See Love v.*

*Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995)." Put another way, in order for state action to be a violation of substantive due process it must be "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991), *cert. denied*, 502 U.S. 1097 (1992).

This bar is even higher in the context of zoning challenges where such decisions are within the purview of the state police power. For a substantive due process challenge to succeed, "it must be clear that the state's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'" *Nectow v. Cambridge*, 277 U.S. 183, 187-88 (1928) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). Further, the Fourth Circuit noted: "the Supreme Court has narrowed the scope of substantive due process protection in the zoning context so that such a claim can survive *only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning*." *Sylvia Dev.,* 48 F.3d at 827 (emphasis added) (citing *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974).

### i.    Entitlement

The Fourth Circuit's decision in *Gardner v. City of Baltimore Mayor & City Counsel*, 969 F.2d 63, 68 (4th Cir. 1992) forecloses any argument that the plaintiff has a claim of entitlement on which to base a substantive due process claim. In *Gardner*, the Fourth Circuit addressed a "claim of entitlement" by plaintiffs to a permit approval and held

that "whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or withhold its approval." ***Gardner***, 969 F.2d 63 (emphasis in original). In this case, the Shepherdstown Planning Commission exercises discretion to issue or deny permits, but within proscribed parameters. The Commission derives this power directly from the West Virginia Code.

Pursuant to West Virginia Code Section 8A-2-1(d), "planning commissions are authorized to carry out the objectives and overall purposes of [Chapter 8]." Further, the "planning commission has . . . powers, duties and jurisdiction as given to it in the ordinance creating it." Section 8A-2-1(e). The Shepherdstown Ordinance that creates its Planning Commission, specifically Section 9-107, states that "[t]he Commission shall have the power, authority and duty to: (8) prepare . . . ordinances and other material relating to the activities authorized under Chapter 8A-2-1 of the West Virginia Code" and to (10) "[i]nvoke any remedy for the enforcement of the provisions of the chapter or any ordinance, rule and regulation or any action taken thereunder." Section 9-107 then provides a catch-all in which it states that "[t]he Commission shall have such other powers, authorities and duties as are set forth in Chapter 8A-2-1 of the West Virginia Code . . . which are not specifically enumerated above." This Court finds it important that the West Virginia Code permits these municipalities to create such planning commissions and expressly grants them the power to carry out the purposes of Chapter 8, if the municipality so chooses to grant the commission such power in its ordinance. Important to this action, the Shepherdstown Planning Commission has in fact been granted these full powers permitted by statute.

In analyzing the full scope of Chapter 8, it becomes abundantly clear to this Court

that the Planning Commission has broad discretion to grant or deny the types of permits the plaintiff seeks. Further, this Court finds that Chapter 8, read together with the Shepherdstown Ordinance, is anything but vague.

The Fourth Circuit further noted: "the standard focuses on the amount of discretion accorded the issuing agency by law, not on whether or to what degree that discretion is actually exercised. 'Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest.'" *Gardner*, 969 F.2d at 68 (quoting *RRI Realty Corp. v. Inc. Village of Southhampton*, 870 F.2d 911, 918 (2d Cir. 1989)). Based on the Fourth Circuit's holding in *Gardner*, therefore, the ordinance would have to deny the Commission the discretion to refuse to issue the permit. Here, the ordinance clearly provides the Commission with the authority and discretion to issue these permits, and thereby forecloses any claim of entitlement by the plaintiff. *See also, Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983) (finding a claim of entitlement, but distinguished by the Court in *Gardner* because "the county was required by state law to issue a building permit 'upon presentation of an application and plans showing a use expressly permitted under the then-current zoning ordinance.'").

### ii.     The State has Not Deprived the Plaintiff of his Property Interest

"To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived [him] of a protected property interest . . .. Before [the court] can determine whether the . . . application of the ordinance is arbitrary and capricious, the [municipality] must be given an opportunity to finally determine how it will interpret and apply those laws." *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d

1285, 1291 (3d Cir. 1993).  Looking to **Williamson County**, *supra*, for guidance, the Court in **Taylor** held that a full and final determination must be rendered as to "whether, and to what extent, a deprivation has occurred before a federal claim is mature."  *Id*.  This is important to be clear whether the municipality has acted in an arbitrary and capricious manner as well as allowing possibilities for settlement to be reached, thereby obviating the need to address the constitutional questions. *See id*. at 24.

Although this Court has determined to exercise its jurisdiction without the benefit of the wisdom of the Board of Appeals, it can conclude that the Planning Commission's actions were not arbitrary.  As the Fourth Circuit Court of Appeals eloquently summarized in a recently published opinion, "'issues such as the concern over . . . the preservation of [a] community's aesthetic character' are, appropriately, 'at the heart of countless local zoning disputes.'  **Sylvia Dev. Corp.**, 48 F.3d at 829.  Once again we decline the invitation to turn federal courts into clearing-houses for alleged constitutional violations that in fact are only the routine and routinely contentious disagreements arising out of local permitting decisions."  **Henry v. Jefferson County Commission**, -- F.3d --, No. 09-1546 (4th Cir. March 3, 2011).

   iii.   **Plaintiff Has Failed to Show That Any Deprivation Was Incurable Through Post-Deprivation Process**

Additionally, even were this Court to find that the plaintiff had a claim of entitlement, the plaintiff's substantive due process claim would nevertheless fail because he has not shown that the alleged deprivation was incurable through post-deprivation process.  In order for the "state's action [to fall] so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency," the "alleged purpose behind the state

13

action [must have] no conceivable rational relationship to the exercise of the state's traditional police power through zoning." ***Sylvia Dev.***, 48 F.3d at 827. Here, although the plaintiff alleges that the Planning Commission's stated reasoning for its denial of the plaintiff's permit was pretextual in nature and that the true purpose was based on retaliation, this claim fails as a matter of law given that former mayor Dom was not involved in the decision-making process. ***Henry v. Jefferson County Commission***, -- F.3d --, No. 09-1546 (4th Cir. March 3, 2011). As such, any argument by the plaintiff that the legitimate stated reason provided by the Planning Commission was a pretext for the alleged retaliation against him is mere speculation upon which the plaintiff cannot base a claim. Accordingly, for the reasons stated above, the plaintiff's claim for violation of his substantive due process rights is **DISMISSED**.

### C. Plaintiff Fails to State a Procedural Due Process Claim

In order to state a claim for violation of procedural due process, the plaintiff must show that the Commission failed to provide the process required by the Ordinance. *See* ***United States v. Heffner***, 420 F.2d 809, 811-2 (4th Cir. 1970); ***Powell v. Brown***, 160 W. Va. 723, 238 S.E.2d 220 (1977).

Plaintiff's claims are based upon the alleged failure of Shepherdstown to apply existing ordinances to his second building permit application in compliance with the West Virginia Constitution; failure to enact standards, guidelines, criteria, or definitions in a manner that would guide him or any applicant seeking approval of a building permit; and unconstitutional vagueness of the ordinances as written. Additionally, as discussed *infra*, the plaintiff argues that the process was tainted by the alleged conspiracy of former mayor Dom. The plaintiff's claim fails on both grounds.

### i.    The Ordinance Provides Sufficient Guidance Relevant to this Inquiry

As an initial note, this Court recognizes that the finality rule mandates that state zoning authorities be given an opportunity to "arrive at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question" before its owner can have "a ripe constitutional challenge based on the disputed decision." ***Williamson County*** at 191.   Thus, the rule recognizes that a property owner suffers no mature constitutional injury until the appeals board is given the opportunity to define the harm to the owner. ***Id***.   Again, the plaintiff has repeatedly denied the Board this opportunity.

Nevertheless, this Court will address the alleged failure of Shepherdstown to apply the existing Ordinances in compliance with the West Virginia Constitution; failure to enact standards, guidelines, criteria, or definitions in a manner that would guide him or any applicant seeking approval of a building permit; and unconstitutional vagueness of the ordinances as written.   In support of these assertions, the plaintiff cites to a Supreme Court of Appeals decision regarding Subdivision Regulation, Syl. Pt. 1 ***Singer v. Davenport***, 164 W. Va. 665, 264 S.E.2d 637 (1980), which held:

> A subdivision regulation enacted by a planning commission must be reasonable and the regulation must sufficiently restrain the discretion of the Commissioners to ensure fair administration and must sufficiently inform the property owner to ensure adequate guidance in preparation of plans.

Indeed, the above provides sound requirements for such enactments.   The inquiry, however, does not end there.   The Supreme Court of Appeals has further held that "courts are not disposed to declare an ordinance invalid in whole or in part where it is fairly debatable as to whether the action of the zoning commission or city council is arbitrary or

unreasonable." **Anderson v. City of Wheeling**, 150 W. Va. 689, 699, S.E.2d 243 (1966). The court in **G-M Realty, Inc. v. City of Wheeling**, 146 W. Va. 360, 120 S.E.2d 249, further held that "[t]he enactment of a zoning ordinance of a municipality being a legislative function, all reasonable presumptions should be indulged in favor of its validity."

In this case, the plaintiff asserts the Commission's stated conclusions for denying the permit are not supported by the evidence and that it "relied upon subjective personal judgments regarding 'aesthetics,' 'integrity of the neighborhood' and 'value of the property for resale' . . .." Compl. at ¶¶ 47-48. Assuming, *arguendo*, that certiorari was an appropriate remedy when the plaintiff failed to avail himself of the proper administrative remedy provided by law, a reviewing court should reverse the decision of a planning commission only where it "has applied an erroneous principle of law, was plainly wrong in its factual findings, or has acted beyond its jurisdiction." **Maplewood Estates Homeowners Ass'n v. Putnam County Planning Comm'n**, 218 W. Va. 719, 722, 629 S.E.2d 778, 781 (2006). "The plainly wrong standard of review is a deferential one, which presumes an administrative tribunal's actions are valid as long as the decision is supported by substantial evidence. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." **Id**. These should make for interesting determinations for the Board of Appeals to address. Simply put, this Court finds that it would be inappropriate to "supplant a factual finding of [the commission] merely by identifying an alternative conclusion that could be supported by substantial evidence." **Id**. at 723. This Court certainly will not do so when the asserted alternate reason for the permit denial is premised on an unfounded conspiracy to taint the process.

### ii. The Allegation That Mayor Dom Tainted the Process Fails as a Matter of Law

Next, this Court finds that any alleged interference by former mayor Dom with respect to the Planning Commission proceedings is unfounded. Indeed, it is true that "[w]hether actual or apparent, bias on the part of a single member of a tribunal taints the proceedings and violates due process." *Strivers v. Pierce*, 71 F.3d 732, 747-48 (9th Cir. 1995). In *Winthrow v. Larkin*, 421 U.S. 35, 47 (1975), the Supreme Court held that in order to show bias on the part of an administrative tribunal, the person "must overcome a presumption of honesty and integrity in those serving as adjudicators." Given the presumption set out in *Winthrow*, and the fact that defendant Dom did not participate in any decision-making as to this permit, the plaintiff has failed to show a procedural due process violation.

The Fourth Circuit recently expressed its position regarding such issues in *Henry v. Jefferson County Commission*, -- F.3d --, No. 09-1546 (4th Cir. 2011). In that case, the plaintiff similarly asserted that the defendants violated his procedural due process rights because a former member of the Planning Commission spoke out against the plaintiff's permit in a public meeting. That Commission member eventually recused himself prior to the vote on the plaintiff's application. Nevertheless, the plaintiff argued that the "mere knowledge of a recused commissioner's opposition suffices to taint the entire zoning process." In denying this argument, the Fourth Circuit pointed out that the plaintiff could cite to no court decision that has endorsed such a position. Based upon the above, the plaintiff's procedural due process claims are hereby **DISMISSED**.

**D.    Plaintiff Fails to State a Claim for Retaliation**

Furthermore, to the extent that the plaintiff asserts a loosely-based claim for retaliation or conspiracy under 42 U.S.C. § 1983, the same is also **DISMISSED**.  While this Court notes that it previously dismissed defendant Dom, the plaintiff's Complaint contends Dom's alleged actions continue to permeate every facet of this case.  Accordingly, this Court will attempt to diffuse the plaintiff's misconception regarding the same.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must first show that the act was "committed by a person acting under color of state law," and that the conduct "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  ***Avery v. County of Burke***, 660 F.2d 111 (4th Cir. 1981) (quoting ***Parratt v. Taylor***, 451 U.S. 527, 535 (1981)), *overruled on other grounds*, ***Daniels v. Williams***, 474 U.S. 327 (1986)).  Additionally, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  ***Hafer v. Melo***, 502 U.S. 21, 25 (1991) (internal quotations omitted).

"To establish a civil conspiracy under section 1983, [plaintiff] must present evidence that [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right."  ***Hinkle v. City of Clarksburg***, 81 F.3d 416, 421 (4th Cir. 1996).  And, "to prove a section 1985 conspiracy, a claimant must show an agreement or a meeting of the minds by defendants to violate the claimant's constitutional rights."  ***Simmons v. Poe***, 47 F.3d 1370, 1377 (4th Cir. 1995) (internal quotations omitted).

In order to state a claim for retaliation the plaintiff must show that (1) there was an

intention to retaliate against him, and (2) that the plaintiff suffered some detriment as a result. *See **Huang v. Bd. of Governors of Univ. of North Carolina***, 902 F.2d 1134, 1140 (4th Cir. 1990).

In ***Keith v. Town of Knightdale***,1998 WL 112815, at *1-2 (4th Cir. March 16 1998), the Fourth Circuit affirmed the district court's decision finding the evidence adduced at trial in support of appellant's claims of retaliation insufficient as a matter of law.  In its opinion the Fourth Circuit stated:

> Well-established principals of causation guide our analysis. Under the standard established in ***Mt. Healthy City Bd. of Educ. v. Doyle***, 429 U.S. 274 (1976), a claimant must demonstrate that conduct protected by the First Amendment "was a 'substantial factor'–or, to put it in other words, a 'motivating factor'" in the town's adverse decisions.  *Id*. at 287. The burden then shifts to the defendants to prove, by a preponderance of the evidence, that the allegedly retaliatory actions would have been taken in the absence of the protected conduct.  *Id*.
>
> Notwithstanding the factual nature of the inquiry into motive, the question may not be determined by the jury if the evidence fails to show a reasonable probability of improper motive.  *See **Lovelace v. Sherwin-WIlliams Co.***, 681 F.2d 230, 241-42 (4th Cir. 1982).  We have explained that "if the inference sought to be drawn lacks substantial probability, and attempted resolution of the question may well lie within the area of surmise and conjecture, so that issue  should not be submitted to a jury for consideration."  *Id*. at 242 (internal quotation marks and citation omitted).

The Court found that despite the fact that the appellant had "established the intent of various counsel members to drive [him] out of business," appellant had not been able to "forge even a tenuous link between his first amendment activities and adverse actions taken with respect to [his] development projects." *Id.* The Court went on to note that the appellant would "have [the Court] infer causation from the bare juxtaposition of his protected conduct, appellees' expressed antagonism, and the town's adverse actions." *Id.* at 2.

Here, the plaintiff has likewise presented no evidence that would amount to a "tenuous link between [his] first amendment activities and adverse actions taken with respect to" his permit denial. Had defendant Dom participated in the decision, or had the Commission members that voted in favor of the plaintiff's permit refused to speak to the issue of whether the plaintiff had a fair hearing, this Court might be willing to grant the plaintiff some "tenuous link," but the plaintiff cannot conceivably show that.

Further, in ***Henry v. Jefferson County Commission***, -- F.3d --, No. 09-1546 (4th Cir. 2011), the Commission member accused of being involved in a conspiracy eventually recused himself prior to the vote on the plaintiff's application. Nevertheless, the plaintiff argued that the "mere knowledge of a recused commissioner's opposition suffices to taint the entire zoning process." In denying this argument, the Fourth Circuit pointed out that the plaintiff could cite to no court decision that has endorsed such a position. *Id*.

Accordingly, this claim is **DISMISSED**.

### E.    Plaintiff's Equal Protection Claim Fails

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "denying to any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV, § 1. The purpose of the Equal Protection Clause is to "require[ ] that the states apply each law, within its scope, equally to persons similarly situated, and that any differences of application . . . be justified by the law's purpose." *Sylvia Dev.*, 48 F.3d at 818. In order for the plaintiff to have a viable equal protection claim, he must show that the zoning laws were applied in an unequal way to "persons similarly situated." *Id.*

The first step in assessing the plaintiff's equal protection claim is determining if the government created a classification that singles out a particular group of individuals for unique treatment under the law. *Id.* Next, the Court must analyze the government's action according to the appropriate degree of scrutiny. *See Id.* at 820.

As to the first step, this Court is at a loss as to what stated basis the plaintiff provides in support of his Equal Protection claim. Plaintiff has neither alleged any facts placing him into any protected category, nor has he alleged any disparity in the application of the Ordinance to persons similarly situated. Rather, the plaintiff seems to undercut his own argument by stating that "[t]he Town of Shepherdstown has no standards, guidelines, or Ordinances regarding the maintenance of windows to guide [him] **or any other Applicant or property owner**." Compl. at ¶ 32 (emphasis added). Disregarding the fact that this Court disagrees with this conclusion, important to the plaintiff's Equal Protection claim is his own statement that he *is* treated the same as others similarly situated.

Where, as has been established in this case, there is no contention that the government has burdened a fundamental right or employed a suspect classification, the Court should apply rational basis scrutiny, which presumes the decision is valid so long as "the classification . . . is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985) (citations omitted); *see also*, *Front*

***Royal & Warren County Indus. Park Corp. v. Town Front Royal***, 135 F.3d 275, 290 (4th Cir. 1998) (citations omitted). Under rational basis scrutiny, the decision of the Commission must be sustained "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." ***Int'l Sci. & Tech. Inst. v. INACOM Comm's, Inc.***, 106 F.3d 1146, 1157 (4th Cir. 1997).

Previously finding no classification at all, this Court is perplexed how to even finish this analysis. This Court does find, however, that the decision of the Commission is related to several legitimate state and local interests discussed at length in this opinion, for example, historic preservation. Specifically, the West Virginia Code Section pertaining to Historic Landmark Commissions, 8-26A-1, *et seq.*, recognizes the importance of preserving the rich architectural and cultural heritage of this state and, in so doing, acknowledges that such preservation "can best be . . . protected . . . by empowering action for this purpose at the local level." Accordingly, this Court finds such - at the very least - to serve as a legitimate state interest sufficiently suited to withstand the low bar set by the rational basis test. For these reasons, the plaintiff's equal protection claim must be **DISMISSED**.

### F.      Count III is Dismissed for Failure to Exhaust Administrative Remedies

Once again, the plaintiff attempts to circumvent the proper administrative appeals process by confusing the applicable statutes. In so doing, the plaintiff cites no relevant case law in support of his self-serving statutory interpretation. Specifically, the plaintiff attempts to bestow jurisdiction upon the courts by arguing that the Board of Zoning Appeals is not authorized by West Virginia law to hear and determine appeals regarding building permits. Rather, the plaintiff would have this Court apply Section 8A-5-10, which provides for appellate review of a Planning Commission decision directly to the circuit court. That

Code Section, entitled "Subdivision or Land Development Plan and Plat," does not govern the type of permit sought in this case. In that Section, the jurisdiction of planning commissions pertains to - as the title indicates - approval of subdivision or land development applications. Examples of such would include: "(1) Merger or consolidation of parcels of land; (2) Land transfers between immediate family members; and (3) Minor boundary line disputes." Section 8A-5-2(b)(1-3). This Court fails to see how window replacements fall into any of the above categories.

In a moment of clarity, the plaintiff correctly identifies the permit at issue in this case as an "Improvement Location Permit." However, the plaintiff quickly reverts to the absurd by making an incorrect statement of law concerning the same. Indeed, in his response brief, the plaintiff states that "jurisdiction pertaining to . . . Improvement Location Permits is expressly provided with the Subdivision Review Process and outside the Zoning Process (Section 8A-4-2(14))." See Doc. 49. This is wrong on two fronts. First, nowhere does the statute expressly reserve jurisdiction over such permits to the Subdivision Review Process. Second, this review is clearly not outside the realm of the Zoning Process.

In *Dewey v. Bd. of Zoning Appeals of Greenbrier County*, 185 W. Va. 578, 408 S.E.2d 330 (W. Va. 1991), the Supreme Court of Appeals held that "appeals from the issuance of any **improvement location permits** by the official charged with that authority under the ordinance are to be filed with the Board of Zoning Appeals." (emphasis added). The commissions derive their general authority to adopt zoning ordinances from W. Va. Code Section 8-24-39, which provides, in relevant part: "The governing body of a . . . commission shall have the . . . power: (c) To regulate the alteration of exterior architectural features of buildings with in historic districts . . .."

23

The ***Dewey*** Court continues:

Furthermore, under the provisions of W. Va. Code, 8-24-36 [1973], no improvement location permit shall be issued for a structure within the jurisdiction of the county commission "unless the structure and its location conform to the county's comprehensive plan and ordinance." The official who has the authority to issue and control improvement location permits with the jurisdiction of the commission is designated by the . . . ordinance. W. Va. Code, 8-24-37 [1969].

As part of the zoning ordinance, the commission is also required to create a Board of Zoning Appeals. See W. Va. Code, 8-24-51 [1969]. Appeals from the issuance of any improvement location permits by the official charged with that authority under the ordinance are to be filed with the Board of Zoning Appeals. See W. Va. Code, 8-24-55 [1969]. The Board of Zoning Appeals is required, pursuant to the provisions of W. Va. Code, 8-24-55 [1969], to "[h]ear and determine appeals from and review any order, requirement, decision or determination made by an administrative official . . . charged with the enforcement of any ordinance[.]"

185 W. Va. 578, 582 (citations omitted).

Accordingly, this Court finds that the denial of the plaintiff's Improvement Location Permit correctly falls under the purview of Chapter 8A, Article 7 of the West Virginia Code, which defines "Zoning" in § 8A-1-2(gg) as the "division of a municipality or county into districts or zones which specify permitted and conditional uses and development standards for real property within the district or zones." In light of the above, it is apparent to this

Court that the plaintiff once again failed to exhaust the proper administrative remedy. Accordingly, Count III is **DISMISSED**.

Having now determined the applicable statute governing the appropriate appeals process, this Court will address the plaintiff's claims regarding the allegations that the relevant ordinances failed to provide fairness and did not sufficiently inform the property owner to ensure adequate guidance in preparation of plans.  Section 8A-7-1 provides, in relevant part:

The governing body of a municipality or a county may regulate land use within its jurisdiction by:

    (1)    Adopting a comprehensive plan;

    (2)    Working with the planning commission and the public to develop a zoning ordinance; and

    (3)    Enacting a zoning ordinance.

        (b)    A zoning ordinance may cover a county's entire jurisdiction or parts of its jurisdiction.

        (c)    A zoning ordinance may cover a municipality's entire jurisdiction.

        (d)    A municipality may adopt, by reference, the zoning ordinance of the county in which it is located.

Shepherdstown's most recent version of its Comprehensive Plan 2000 was enacted in 2001.  In conjunction with that Plan, Shepherdstown enacted a zoning ordinance in Title 9, Chapter 2, of the Shepherdstown Municipal Code, Zoning: Legislative Intent and General Regulations, Section 9-201, which states:

The purposes of the following chapters in this title are as follows:
Implement the Comprehensive Plan with particular attention to:

(a)    Protection of the health, safety and general welfare of the present and future citizens of the Town.

(b)    Promotion of the economic stability and growth of the community.

(c)    Preservation of the historic landscape and **structures**.

(d)    Provision for appropriate efficient and compatible land use.

(emphasis added).

Further, Section 9-203 establishes zoning districts, which places the plaintiff's subject property squarely within the Historic District.  Section 9-301 speaks to the public purpose of the Historic District:

The preservation of structure of historic and architectural value together with the appurtenances and environmental landscape is a public purpose of Shepherdstown.  The purpose of this chapter is (1) to safeguard the heritage of the town by preserving the district therein which reflects elements of its cultural, social, economic, political or architectural history; (2) to stabilize and improve property values in such a district; (3) to foster civic beauty; (4) to strengthen the local economy; and (5) to promote the use and preservation of the Historic District for the education, welfare and pleasure of the residents of the municipal corporation.

Read together with Section 9-205, "Application of regulations," the above brings into focus that "[n]o buildings or land shall hereafter be used and no building or part thereof shall be erected, moved or **altered** unless for a use expressly permitted by and in conformity with the regulations for the district in which it is located."  (emphasis added).

Chapter 9 of the Municipal Code speaks to the enforcement of these ordinances, specifically Section 902-2, pertaining to building permits:

1. Required

   (a)   Before any construction, **alteration**, reconstruction, moving or demolition of any structure is made within the town **which would affect the exterior appearance** of the structure, the applicant proposing the construction or change **shall file with the Commission** to build, alter, reconstruct, move, demolish or make the addition.

   (emphasis added).

The plaintiff argues that the above language is vague and unenforceable and that there exist no guidelines, standards, criteria or definitions pertaining to the replacement of windows.  To the contrary, Chapter 8 of the West Virginia Code expressly discusses the Planning Commission's authority to issue permits for the replacement of windows.  First, based upon the Comprehensive Plan prepared by the Planning Commission, the zoning officer or Planning Commission itself may issue improvement location permits.  See W. Va. Code § 8A-1-1(8)(C).  As defined by statute, improvement location permits include "permits issued by a municipality . . . in accordance with its . . . ordinance, for the . . . installation, placement, rehabilitation or renovation of a structure . . .."  As a final note, Section 9-902 XIV, sets forth a specific fee schedule for the issuance of permits, including a $20.00 fee for "**window replacement**."  (emphasis added).

Despite the sufficient literature provided in the West Virginia Code and the Shepherdstown Ordinance, the plaintiff nevertheless makes a point to question whether a permit is even required to replace windows.  In fact, the plaintiff is so bold as to state in his Complaint that "[he] would have replaced his windows in 2006 without the need for a Building Permit but for the unlawful misconduct of Lance Dom . . .."  Compl. at ¶ 58.  In his Complaint, the plaintiff states:  "The Shepherdstown Municipal Ordinances fail to provide

27

specific guidelines, standards, criteria or definitions to determine whether or not a Building Permit is required for the replacement of windows in a residence." Compl. at ¶ 18. This Court would be remiss to leave this stone unturned.

Pursuant to the Shepherdstown Ordinance, "[w]ork shall not be commenced on any such project until such a certificate of approval has been filed and no building permit for such change or construction may be issued until such certificate of approval is filed." Furthermore, "[t]he applicant shall not commence the proposed work or change until and unless he . . . has received such a certificate of approval from the Commission." Section 9-902 VI.

In granting the Planning Commission the authority to adopt a comprehensive plan, the West Virginia legislature further enabled it to develop and enact zoning ordinances. See W. Va. Code § 8A-7-1(a). In so doing, the legislature provides the Planning Commission with certain objectives to consider when enacting such ordinances including, but not limited to, ensuring attractiveness and preserving historic buildings. See § 8A-7-2(a). To that end, "[a] zoning ordinance may include the following: (8) Regulating the . . . architectural features of buildings, including reasonable **exterior architectural features** . . .." Id. (emphasis added). Under the definitions section of Chapter 8, "exterior architectural features" is expressly defined as "the architectural character and general composition of the exterior of a structure, including, but not limited to, . . . **the type, design and character of all windows** . . .." W.Va. Code § 8A-1-2(h) (emphasis added).

Moreover, the very Ordinance upon which the plaintiff claims the Planning Commission unlawfully and illegally relied in denying his permit, § 9-902 IV(a)(b), specifically includes window replacement and grants the Commission the authority to deny

permits for the same.  Specifically, that provision provides:  "In reviewing all plans required to be submitted by this Section . . . the Commission shall give consideration to: (1) the historic or architectural value and significance of the structure and its relationship to the historic value of the surrounding area; (2) the relationship of the **exterior arcitectural features** [which includes "the type, design and character of all windows"] of the structure to the remainder of the structure and to the surrounding area; (3) the general compatibility of exterior design, texture and materials proposed to be used; (4) any other factors including aesthetic factors which the Commission deems to be pertinent."  (emphasis added).  Subsection (c) sets forth limitations on the Planning Commission's discretion by requiring it to approve certain applications; however, it expressly provides an exception when the application pertains to any of the four above-listed factors.  In this case, window replacement is included in the second factor; accordingly, the Planning Commission is within its broad discretionary power to deny such application.

While it is true that the ordinance does not spoonfeed property owners the precise information the plaintiff seeks, it would be virtually impossible to achieve the same.  The very nature of historic preservation simply requires a degree of discretion based upon subjective aesthetic judgments.  Such judgments are certainly not for this Court to determine.  This is precisely why the legislature, as noted above, specifically addressed how these issues are best addressed by local entities such as the Historic Landmark Commissions and Planning Commissions.  See W.Va. Code § 8-26A-1.  It has previously been established that such questions shall be directed through the appropriate administrative appeals channels which, in this case, is the Board of Zoning Appeals.

**G.      This Court Denies the Plaintiff's Request for Writ of Mandamus**

As a last ditch effort, the plaintiff requests a Writ of Mandamus against the Planning Commission.  "A writ of mandamus will not issue unless three elements coexist: (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."  Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969).  This Court finds that the Shepherdstown Ordinance provides that an aggrieved person may appeal a decision rendered by a zoning officer to the Shepherdstown Planning Commission, and then to the Board of Appeals pursuant to § 9-902 Section IX (a).  As the statute provides another remedy for the plaintiff - a direct administrative appeal - the extraordinary writ of mandamus is inappropriate.

Furthermore, this Court established that there is no clear legal right to the requested permit, and there exists no legal duty on the part of the Commission to grant the permit. It was fully discussed above that the Commission had broad authority to make its denial, and sufficient evidence supported its decision.  Accordingly, the request for a writ of mandamus is **DISMISSED**.

**H.      Plaintiff's Petition for Writ of Certiorari is Dismissed**

When appealing the decision of a planning commission, West Virginia Code § 8A-9-1(a) states:  "Every decision or order of the planning commission, board of subdivision and land development appeals, or board of zoning appeals is subject to review by certiorari." "Certiorari is appropriate to review the proceedings of bodies and officers acting in judicial or quasi judicial capacity, **where no other remedy is provided**."  *Reynolds Taxi Co. v. Hon. A.P. Hudson*, 103 W. Va. 173; 136 S.E. 833 (1927) (emphasis added).  This Court

finds that the Shepherdstown Planning Commission was acting in a judicial or quasi-judicial capacity when it held a hearing, considered evidence, and ruled upon the plaintiff's building permit application. This, however, does not end the inquiry. In ***Daurelle v. Traders Fed. Sav. & Loan Ass'n***, 143 W. Va. 674, 104 S.E.2d 320 (1958), the Supreme Court of Appeals held that:

> Where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.

*See also* ***State ex rel. Fields v. McBride***, 216 W. Va. 623, 609 S.E.2d 884 (2004).

As previously determined, the Shepherdstown Ordinance allows the plaintiff to appeal to the Board of Appeals if aggrieved by a decision of the Shepherdstown Planning Commission. See § 9-902 Section IX and X. It is by no fault of anyone save the plaintiff that this remedy has not been exhausted. Therefore, as "[an]other remedy is provided," Certiorari is not appropriate under these circumstances.

The authority for the above-referenced appeals process is enumerated in West Virginia Code Section 8A-8-9, which sets forth the powers and duties of the boards of zoning appeals. That Section states, in relevant part:

> A board of zoning appeals has the following powers and duties:
>
> (1)     Hear, review and determine appeals from an order, requirement, decision or determination made by an administrative official or board charged with the enforcement of a zoning ordinance or rule and regulation adopted . . ..

As noted by the defendants, the Shepherdstown Planning and Zoning Ordinances

contain nearly identical language:

> The board shall have the following powers:
>
> (a)     To hear, and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Planning Commission in the enforcement of this title or of the provisions of the West Virginia Code . . ..

Chapter 10, Section 9-1007.

As previously noted, this Court is obligated to give proper deference to the findings of an administrative body charged to implement planning and/or zoning ordinances.  *See State ex rel. Wensell v. Trent*, 218 W. Va. 719, 722; citing *Corliss v. Jefferson County Bd. of Zoning Appeals*, 214 W. Va. 535 ("There is a presumption that a board of zoning appeals acted correctly . . ..").

In this case, the plaintiff did not even exercise his right to appeal to the Board of Appeals, and accordingly, the decision regarding the denial of his permit was not reviewed by the ordinary administrative body charged with the enforcement of the Shepherdstown ordinances at issue.   Accordingly, this Court finds it is not its place to scrutinize the presumptively correct action of the Planning Commission or to assess the proper deference to give the Board because, quite simply, the plaintiff never pursued his claim in the appropriate course.   This Court cannot make such determinations without a final administrative record, which clearly does not exist.

The Supreme Court of Appeals has noted the significance of the legislative intent to produce fully developed records:  "the legislature, by requiring the Board of Zoning Appeals to conduct a hearing, intended for a complete record to be developed before the

Board. Then, if the decision of the Board of Zoning Appeals is subject to review by certiorari to the circuit court pursuant to W. Va. Code, 8-24-59 [1969], the circuit court has the benefit of a fully developed administrative record."

Furthermore, when an administrative remedy is provided, a party must avail himself of or otherwise exhaust that remedy before turning to the court. "'The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Syl. Pt. 1, *Daurelle v. Traders Fed. Sav. & Loan Ass'n*, 143 W. Va. 674, 104 S.E.2d 320 (1958).' Syl. Pt. 1, *Cowie v. Roberts*, [173 W. Va. 64], 312 S.E.2d 35 (1984)." Syl. Pt. 1, *Hechler v. Casey*, 175 W. Va. 434, 333 S.E.2d 799 (1985).

In the prior action, the circuit court dismissed Count III, which requested that the court issue a Writ of Mandamus directing the Building Code Official to approve the replacement windows. The circuit court, in denying this relief, recognized the failure to exhaust administrative remedies. The plaintiff asserts that "[t]he circuit court anticipated a return to administrative remedies with a possible different outcome in a final adjudication on the merits" and that "[he] redoubled his efforts in expectation that his second application would be approved." See Doc. 50. This Court is baffled by the plaintiff's subsequent actions. It appears that the circuit court, upon denying relief the first time for failure to exhaust administrative remedies, would have made it clear to the plaintiff that he was required to pursue his appeal to the Board of Zoning Appeals. Instead, the plaintiff's troublesome "redoubling of efforts" included his failure to pursue the proper channels for obtaining the first permit, followed by an application for a second permit for the same

window replacement. Then, armed with the knowledge of the proper appeals channel, the plaintiff stubbornly refused to follow the circuit court's guidance. Instead, this Court sits today in the same position as the circuit court did upon denial of the first permit.

By failing to file an appeal to the Board of Zoning Appeals, the plaintiff failed to follow the direct and ordinary statutory administrative remedies provided under the Ordinance. That failure denied the defendants of their statutory right to a local informal administrative appeal. The failure further denied to this Court the experience and expertise of the administrative body charged by law to interpret and enforce the ordinances of Shepherdstown. Certiorari is an extraordinary remedy and because the plaintiff failed to file an administrative appeal available under the Shepherdstown Code, this Court finds that this matter does not meet the requirements for relief by writ of certiorari; as such, this request is **DISMISSED**.

## I.     Plaintiff's Request for Declaratory Relief is Denied

Count IV of the Complaint seeks Declaratory Relief pursuant to West Virginia Code § 55-13-1, *et seq.* to determine the rights and responsibilities of the parties pursuant to the Municipal Ordinance of Shepherdstown's Sections 9-902 IV(a) & (b) and 9-902 V(a),(c) and (d). Plaintiff also requests similar analysis of the parties' rights pursuant to "Chapter 8A of the West Virginia Code, the Sheperdstown Municipal Ordinance and the West Virginia Constitution and the effect these may have on the plaintiff's Constitutional rights to a fair hearing, Due Process and Equal Protection of the Law." Compl. at ¶ 82.

Regarding Count IV, this Court hopes this opinion has resolved the specific issues raised therein. To the extent the plaintiff seems to request more, this Court finds that the same lacks reasonable specificity and particularity and are unsupported. Simply put,

"Judges are not like pigs, hunting for truffles buried in briefs."  *See **State Dept. of Health v. Robert Morris N.**,* 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995).

## V.    Conclusion

As previously discussed, should the plaintiff wish to further pursue his quest for the window replacement permit, alas there remains a beacon of hope via the proper administrative avenue; i.e. the Board of Zoning Appeals.  This Court notes that the Shepherdstown Ordinance provides the Board, in its gracious discretion, to consider the plaintiff's appeal despite his continued failures to avail himself of this relief.  Specifically, Section 9-1006 provides that "[a]n appeallant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the Board of Zoning Appeals to act as it considers appropriate . . .."  This Court can only hope the parties can reach some agreeable solution to this action to carry out the best interests of Shepherdstown in preserving its historic beauty.

Accordingly, based upon the above, this Court hereby **GRANTS** the Defendants' Motion to Dismiss **[Doc. 33]**; **DENIES** the defendants' Amended Motion to Dismiss for Res Judicata **[Doc. 31]**; and **ORDERS** this matter be **DISMISSED** and **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** March 9, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

35